**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
GWENDOLYN CHISHOLM SMITH,       )
                               )
            Plaintiff,         )
                               )
       v.                      )    Civil Action No. 00-2205 (EGS)
                               )
NATIONAL ACADEMY OF SCIENCES   )
TRANSPORTATION RESEARCH        )
BOARD, et al.,                 )
                               )
            Defendants.        )
_____)
```

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gwendolyn Chisholm Smith is suing the National Academy of Sciences Transportation Research Board, Robert Reilly, and Robert E. Skinner (collectively "defendants"), claiming that she was denied promotion based on discrimination because of her race, in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*.

Pending before the Court is defendants' supplemental motion for summary judgment. The Court has carefully considered the defendants' motion, the response and reply thereto, plaintiff's surreply and the defendants' response thereto, and the entire record herein. Drawing all reasonable inferences in favor of the plaintiff, the Court finds that a reasonable jury could find that defendants unlawfully discriminated against her. Plaintiff has thus presented evidence demonstrating that genuinely disputed material facts preclude entry of summary judgment in this case.

Accordingly, the Court **denies** defendants' supplemental motion for summary judgment.

I.  **Background**

The parties, who agree on very little, have filed dozens of exhibits numbering hundreds of pages.  The Court has attempted to provide in this section a brief factual summary based on facts that are, for the most part, undisputed.  Some of the disputed facts - a number of which the Court finds are material - will be discussed in section III of this opinion.

Defendants' allegedly unlawful conduct occurred during plaintiff's employment in the Transit Cooperative Research Program ("TCRP") within "Division D" of the Transportation Research Board ("TRB") program unit of defendant National Academy of Sciences ("NAS").  Defendant Robert Skinner ("Skinner") serves as the Executive Director of TRB and defendant Robert Reilly ("Reilly") serves as Director of Division D.  TCRP contracts for and facilitates research projects focusing on "innovative near-term solutions to meet demands placed on transit service providers."  D.'s Statement of Material Facts Not in Dispute ("D.'s Facts") ¶ 1-5; Pl.'s Statement of Genuine Issues ("Pl.'s Facts") ¶¶ 1-5.  Senior Program Officers (SPOs) supervise and

manage these research projects from initiation to final publication.  Facts[1] ¶ 6.

Since 1992, one SPO in TCRP has been designated as the "SPO Program Manager."  The SPO Program Manager is responsible for supervising all other SPOs.  Facts ¶ 52-57.  To reflect these additional duties, the SPO Program Manager receives a salary increase, but remains at the same salary grade as regular SPOs.  Facts ¶ 56.  "SPO Program Manager" is not an officially recognized title at NAS and does not have a written job description distinct from that of a regular SPO.  NAS has never advertised an SPO Program Manager vacancy to the public.

On April 14, 1993, plaintiff was hired by TRB, at the recommendation of SPO Stephanie Nellons-Robinson, as a temporary, hourly consultant to provide support for TCRP SPOs.  Facts ¶ 7.  After a few months, plaintiff was hired for a full-time Program Officer position.  Pl.'s Ex. C.  Plaintiff possesses a Bachelor's degree in Sociology, a Master's degree in Public Administration, and a Juris Doctor degree.  Pl.'s Opp. to D.'s Mot. for Summ. J. ("Pl.'s Opp.") at 4; Pl.'s Ex. G.  Immediately preceding her hire by TRB, plaintiff worked part-time at US Air as a Customer

---

[1] Because plaintiff's "Statement of Genuine Issues" directly corresponds with defendants' "Statement of Material Facts Not in Dispute" (e.g., Plaintiff's ¶ 2 admits, denies, or qualifies defendants' ¶ 2), reference to "Facts" connotes citation to *both* defendants' and plaintiff's respective statements of fact.

Service Representative.  Prior to this, plaintiff worked for four years as a Law Clerk at the Washington Metropolitan Area Transit Authority (WMATA).  In addition, plaintiff held the positions of Contract Administrator and Communication Representative for Motorola, Placement Specialist for Baltimore City Schools, and Legislative Aide to Montgomery County Counsel.  *See* Facts ¶¶ 15-22, 27, 29.

In October 1994, plaintiff was promoted from Program Officer to Senior Program Officer (Grade L).  As part of the promotion, plaintiff's $50,000 salary was increased 13% to $56,500, the minimum salary allowed at salary Grade L.  Between 1994 and 1997, plaintiff's evaluations were "excellent."  Pl.'s Ex. M.  Between 1997 and 1999, however, plaintiff contends that her evaluations became less positive.

In September 1999, the then-SPO Program Manager, Steven Andrle, announced his resignation.  Reilly offered the vacant SPO Program Manager position to Christopher Jenks.  Christopher Jenks possessed an engineering degree and 24 years of transit-related experience (18 prior to joining TRB, six while at TRB).  Facts ¶¶ 48-50, 58, 60.  Jenks declined Reilly's offer because he had another employment offer pending at WMATA.  Ultimately, Jenks accepted the WMATA offer and quit TRB on November 19, 1999.  Facts ¶ 64.

After Jenks declined the offer, the SPO Program Manager position remained vacant and Reilly assumed many of the duties himself, with assistance from plaintiff, another SPO, Diane Schwager, and a temporary employee.  Facts ¶¶ 66-67.  Because both Andrle and Jenks had recently resigned, TRB had two open SPO positions.  Reilly advertised these openings, interviewed candidates, and ultimately hired Stephan Parker to fill one SPO position.  Parker had prior transit-related experience and a Master's Degree in Interdisciplinary Studies: Civil Engineering and Management of Technology.  During his interview, Parker was told he would be competing with plaintiff for the vacant SPO Program Manager position.  In contrast, plaintiff contends that she was never told that Reilly was planning to fill the SPO Program Manager position or that she would be competing for it.

In May 2000, six months after his resignation, Jenks inquired about returning to work at TRB.  On June 12, 2000, Jenks was rehired to fill the remaining SPO vacancy, and Reilly selected him to be the SPO Program Manager.  Facts ¶¶ 78-81.  Plaintiff maintains that she was qualified for the position of SPO Program Manager and that the reason Reilly did not promote her to the position is because she is black.  Defendants, on the other hand, claim that they had legitimate, non-discriminatory reasons for not selecting plaintiff to fill the SPO Program Manager position.

**II.    Standard of Review**

**A.    Legal Standard for Summary Judgment**

Summary judgment is granted pursuant to Fed. R. Civ. P. 56 only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  The Court views the evidence in the light most favorable to the nonmoving party, according that party the benefit of all reasonable inferences.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986).  Thus, in ruling on a motion for summary judgment, the Court will grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not in dispute.

**B.    The *McDonnell Douglas* Framework**

The allocation of burdens of proof in a Title VII case follows the familiar framework enunciated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817 (1973).  To establish a prima facie case for discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants of

plaintiff's qualifications. *McDonnell Douglas,* 411 U.S. at 802; *see also Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002)("This court, like our sister circuits, requires a plaintiff to state a prima facie claim of discrimination by establishing that '(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'")(*citing Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).

The Supreme Court has stated that the burden on the plaintiff of establishing the prima facie case is "not onerous." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089 (1981). In meeting her ultimate burden, plaintiff may rely on a combination of "three possible sources of evidence": "(1) evidence she used to establish her prima facie case; (2) evidence that the defendants' proffered explanation for her termination was false; and (3) any additional evidence of discriminatory motive." *Waterhouse v. District of Columbia*, 298 F.3d 989, 993 (D.C. Cir. 2002).

Once plaintiff has established a prima facie case of retaliation, a presumption is created that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254. The burden then shifts to the employer to articulate, with clarity and reasonable specificity, a legitimate, nondiscriminatory reasons for the retaliatory employment actions

suffered by the plaintiff. *Id.*; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11, 113 S. Ct. 2742 (1993). The employer must introduce evidence that presents reasons for its actions, which would support a finding that the unlawful discrimination was not the cause of the employment action. *Burdine,* 450 U.S. at 254-255. If the defendant satisfies the burden of production, the presumption of discrimination raised by the prima facie case is rebutted. *Id.* at 255. The burden then shifts back to the plaintiff to show that the proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *McDonnell Douglas*, 411 U.S. at 802-05; *St Mary's Honor Ctr.*, 509 U.S. at 508.

Once both parties have met their burdens under the *McDonnell Douglas* burden-shifting scheme, the scheme becomes irrelevant. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43, 120 S. Ct. 2097 (2000); *Aka v. Washington Hospital Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc). Rather, the relevant inquiry is whether there is sufficient evidence from which a reasonable fact finder could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *Reeves*, 503 U.S. at


143 (quoting *Burdine*, 450 U.S. at 255 n.10); *see also Aka*, 156 F.3d at 1290.

In considering a motion for summary judgment, the Court's analysis focuses on:

> whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka*, 156 F.3d at 1289. However, a plaintiff need not present evidence "in each of these categories in order to avoid summary judgment." *Id.* Indeed, in some cases, a plaintiff's strong prima facie case may so strongly suggest the existence of intentional discrimination so as to permit plaintiff to survive summary judgment. *Id.* n.4 (citing *Burdine*, 450 U.S. at 255 n.10).

### III. Discussion

There are genuinely disputed material facts that preclude an entry of summary judgment for defendants in this matter. Plaintiff has identified sufficient evidence, that, when all reasonable inferences are drawn in her favor, would permit a reasonable jury to find that defendants discriminated against the

plaintiff when they failed to promote her to the position of SPO Program Manager.

**A.   Plaintiff's Prima Facie Case**

It is undisputed that plaintiff, a black woman, is a member of a protected class and thus satisfies the first prong of *McDonnell Douglas*.  As to the second prong, whether plaintiff applied and was qualified for a job for which the employer was seeking applications, the answer is less straightforward.  NAS never advertised the SPO Program Manager position opening; however, defendants' own evidence confirms that Mr. Reilly considered SPOs in the department – including plaintiff - to fill the Program Manager position when Andrle resigned in 1999.  *See* Def. Suppl. Mot. at 7 ("Dr. Reilly considered the three remaining SPOs who worked in TCRP at that time as potential candidates for the program manager role: Plaintiff, Chris Jenks, and Dianne Schwager.").

Dr. Reilly selected Chris Jenks, a white male, for the position.  Jenks, however, turned the position down because he was leaving to take a job at WMATA.  That left two remaining SPOs: plaintiff and Schwager.  Here, there is a dispute between the parties as to whether Schwager, a part-time employee who is white, was offered the position.  *Compare* Def. Suppl. Mot. at 8 (citing deposition excerpts) *with* Pl. Opp. to Def. Suppl. Mot. at 10-11 (citing and quoting deposition excerpts).  In any event,

10

whether it was offered to her or not, Schwager did not assume the Program Manager position.

Defendants submit that Reilly also considered plaintiff for the program manager role but decided not to offer it to her *based on her performance*. Def. Suppl. Mot. at 8 ("Plaintiff had performance issues that had surfaced over the years that she worked as an SPO. These performance issues, some of which Plaintiff had only recently shown improvement upon, led Dr. Reilly to conclude that Plaintiff was not ideally suited for the program manager role at that point in her career."); *see also* Reilly Dep. at 156:9-17. Thus, it appears that plaintiff can satisfy the second and third prongs of *McDonnell Douglas*, because defendants were clearly seeking to fill the Program Manager position, plaintiff was at least minimally-qualified because they considered her (i.e., she was an SPO and Reilly considered her a "candidate"), and she was rejected.[2] *See* 411 U.S. at 802.

Finally, the position seems to have remained open and Reilly appears to have continued to consider applicants with plaintiff's qualifications because (1) when Reilly interviewed Steve Parker for an SPO position he told Parker that a decision would be made about the program manager position after six months

---

[2] According to defendants, "[b]y virtue of working in the TCRP SPO position, *all* of the SPOs in TCRP met the minimum qualifications for the program manager role." Def. Reply in Support of Their Supp. Mot. at 15.

11

- and there is some evidence that Reilly told Parker that Parker and plaintiff would be competing for the position; and (2) Reilly hired Jenks for the Program Manager position in June of 2000 when Jenks expressed a desire to return to TCRP. *See* Def. Suppl. Mot. at 9-10 (citing depositions); Pl. Opp. to Def. Suppl. Mot. at 12 (citing depositions). Therefore, plaintiff has satisfied the *McDonnell Douglas* factors and established a *prima facie* case of discrimination.

**B.   Defendants' Burden to Articulate a Legitimate, Nondiscriminatory Reason for Not Promoting Plaintiff**

Defendants assert that they did not promote plaintiff to the program manager position based upon her performance over the years as an SPO. The Court finds that here there are a host of genuinely disputed material facts. For example, plaintiff's evaluations for the years 1994 to 1997 are excellent, and her evaluation from 1998 to 1999 was very good. Pl. Opp. Exs. M and R. Her evaluation for 1999-2000, written by Reilly, on the other hand, is markedly more negative. Pl. Opp. Ex. BB. Moreover, plaintiff offers evidence to rebut some of the "problem" areas that defendants cite as reasons for not promoting her, such as a backlog of projects, noting that another employee in the department was described as an "outstanding employee" despite his backlog and giving reasons why backlogs were not generally relied upon as a basis for an employee's performance at TCRP. Def.

Suppl. Mot. at 15 (citing depositions); Pl. Opp. at 8 (citing exhibits).  The parties also dispute how much work plaintiff had relative to other SPOs, which is relevant to her alleged performance problems.  *See, generally,* Pl. Surreply; Def. Reply and Def. Response to Pl. Surreply.

**C.   Plaintiff's Burden to Show Pretext**

Plaintiff contends that defendants' assertions about her performance problems are a pretext for what was actually a discriminatory decision not to promote her because she is black. She submits that the real reason for the decline in her performance evaluations and for defendants' failure to promote her to Program Manager is an incident involving a fax that contained a racially-derogatory reference to the Million Man March participants as "gorillas."  Pl. Opp. at 7 (citing depositions).

Plaintiff contends that she told Skinner about the fax, which originated somewhere in TCRP, and asked that he find out who sent it.  *Id.*  Plaintiff claims that not only did Skinner not thoroughly investigate the incident, he also told her to laugh it off and used as an example a story about a dinner party he attended with all white guests except for one black man; the black man apparently laughed or smiled in response to a joke about what his ancestors had been doing one hundred years before.

*Id.* at 8.  Plaintiff relayed this conversation to Reilly and informed him that she was offended.  *Id.* (citing Pl. Opp. Ex. D).

Defendants do not appear to respond to plaintiff's allegations regarding the racially-derogatory fax, Skinner's comments, or plaintiff's contention that Reilly evaluated her harshly because she complained about these incidents.  *See, e.g.,* Def. Reply.  In further support of her contentions, plaintiff offers evidence that Reilly and Skinner have never promoted a black person to a management position, and, in fact, that in thirty years there has never been a black person in management at TRB.  Pl. Opp. to Def. Suppl. Mot. at 32-35.

In sum, plaintiff has presented sufficient evidence to permit a reasonable jury to find that the defendants discriminated against her in failing to promote her to the program manager position.  While plaintiff's evidence is not conclusive, it clearly presents genuine issues of material fact, which are properly committed to a jury's consideration.  *Aka*, 156 F.3d at 1289.  It is the province of the jury to determine the credibility of plaintiff's claims and of defendants' proffered reasons for not promoting her.  This case shall therefore proceed to trial.

**IV. Conclusion**

For the foregoing reasons, and upon careful consideration of the defendants' supplemental motion for summary judgment, the

response, reply, surreply and response to the surreply thereto, oral argument held in open court on September 17, 2004, the entire record herein, and the applicable statutory and case law, it is hereby

**ORDERED** that defendants' motion is **DENIED**.

An appropriate Pre-Trial Order accompanies this Memorandum Opinion and Order.

**Signed By:**      **EMMET G. SULLIVAN**
                    **UNITED STATES DISTRICT JUDGE**
                    **September 26, 2005**

Notice via ECF to all counsel of record.